UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL RIVERA ANAYA,<br><br>  Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>  Defendant. | Case No.: 3:25cv959-LL-KSC<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2];**<br><br>**(2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B)** |

**I.  INTRODUCTION**

Plaintiff Daniel Rivera Anaya ("Plaintiff" or "Anaya"), a federal pretrial detainee[1] proceeding pro se, has filed a civil action along with a motion to proceed in forma pauperis ("IFP"). *See* ECF Nos. 1, 2.  In his Complaint, Anaya alleges his rights were violated under

---

[1] The Court takes judicial notice of Plaintiff's criminal case in *United States v. Anaya Rivera*, No. 25-cr-0074-TWR (S.D. Cal.). *See Bias v. Moynihan,* 508 F.3d 1212, 1225 (9th Cir. 2007) (stating a court "'may take notice of proceedings in other courts, both within and without the federal judicial system").

the Federal Tort Claims Act and the Alien Tort Statute. *See generally*, ECF No. 1. As discussed below, the Court grants Plaintiff's IFP motion and dismisses the Complaint without prejudice.

## II.  MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "assess[es] and when funds exist, collect[s], … an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). In short, while prisoners may qualify to proceed IFP without having to pay the full statutory filing fee

---

[2]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

upfront, they remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Anaya has provided a copy of his prison certificate and trust account statement. ECF No. 2 at 4–6. During the six months prior to filing suit, Anaya had an average monthly balance of $9.00, average monthly deposits of $9.00, and an available account balance of $6.96. *Id*. at 4. Accordingly, the Court **GRANTS** Plaintiff's IFP motion and assesses an initial partial filing fee of $1.80 pursuant to 28 U.S.C. § 1915(b)(1). However, this initial fee needs be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). The facility where Plaintiff is detained must thereafter collect the full balance of the $350 fee owed and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

**III.    SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)**

   **A.    Legal Standards**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and sua sponte dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a

complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

### B.     Plaintiff's Allegations

Anaya alleges that on December 11, 2024, he fled his residence in Tijuana, Mexico and went to the pedestrian port-of-entry at the San Ysidro border crossing, seeking to apply for asylum in the United States. ECF No. 1 at 4. When Anaya was "inside the turnstile," a Customs and Border Protection ("CBP") Officer Rivero blocked Anaya from proceeding and asked him for his passport. *Id.* at 5. Anaya then "pushed . . . forward to exit the turnstile" so that he could pull his documents from an envelope he was holding. *Id.* Officer Rivero seemed upset that Anaya had exited the turnstile and "without warning," "viciously push[ed]" Anaya back toward the border. Rivero was joined by another federal officer, and both pushed Plaintiff "multiple times" while Plaintiff told them to stop. *Id.* Other officers arrived and together they "forcefully push[ed]" Anaya across the boundary gate and back into Mexico territory. *Id.*

During the struggle, an officer ripped three buttons of Plaintiff's shirt and threw Plaintiff's documents and cellphone onto the Mexican side of the border. *Id.* Two CPB officers "aggressively kicked" Anaya as he was being dragged back into Mexico. *Id.*

Once back on the Mexican side of the border, Anaya retrieved his cellphone and "decided to return near the gate and stand [his] ground at the border line." *Id.* Officers were "enraged" that Anaya had returned to the border line. *Id.* When Plaintiff tried to explain himself, they closed the gate. As Plaintiff attempted to "stand [his] ground," another "scuffle" ensued, which turned into a "tug of war." *Id.* During the scuffle, papers Anaya was holding came loose and this was "misinterpreted" as Anaya attempting to swing at Rivero. After this, agents "dragged [Anaya] back into the United States" and away from

public view. *Id*. He was then "brutally" taken down by officers, who then "pil[ed] on top" of him. *Id*.

Plaintiff was in pain and yelled that he was not resisting. But while he was face down on the ground, CBP Officer Garcia "slammed" Anaya's head onto the concrete, causing his eyeglasses to fall off and leaving swelling on his left cheek. Plaintiff was then pulled up by officers and handcuffed to a bench. *Id.* at 5–6. Anaya suffered "nausea, dizziness, [and] pain all over [his] body." *Id.* at 6. He requested medical attention but was ignored. *Id*. Plaintiff asked about his belongings and officers retrieved his eyeglasses and paperwork but told Plaintiff they could not find his cellphone. *Id*.

Officers then took Anaya to a security building where he was fingerprinted and booked for "assault on a federal officer." *Id*. At some point, Plaintiff asked to speak with the Mexican Consulate, but his request was ignored. *Id*.

### C.  Discussion

Anaya alleges his rights were violated under the Federal Tort Claims Act ("FTCA") and the Alien Tort Statute ("ATS"). *See generally*, *id*. He names only the United States as a defendant and seeks money damages and injunctive relief. *Id*. at 11.

#### 1.  Federal Tort Claim Act

The FTCA represents Congress' waiver of sovereign immunity "for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008) (citing 28 U.S.C. § 1346(b)(1)). The FTCA, however, has only waived the United States' sovereign immunity for "certain categories of claims." *Id*. at 218. In general, the United States only waives sovereign immunity if an FTCA claim is: (1) against the United States; (2) for money damages; (3) for injury or loss of property, personal injury, or death; (4) that was "caused by the negligent or wrongful act or omission of any employee of the Government;" (5) while such employee is acting within the scope of their employment; and (6) "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

To state a claim and invoke the Court's subject-matter jurisdiction under the FTCA, Plaintiffs must plausibly allege all six elements of Section 1346(b). In addition, section 2675(a) requires a plaintiff to show he "first presented the claim to the appropriate Federal agency and his claim [was] finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).

Here, Plaintiff's FTCA claims must be dismissed because he has not adequately alleged exhaustion of his administrative remedies. While Anaya states he presented his claims to the Department of Homeland Security for "administrative review" by mailing an "SF-95" to the agency on January 22, 2025, he acknowledges that he has not received a notice of receipt or any response from the agency. ECF No. 1 at 11; *see also* ECF No. 1-3 at 3–4. A federal court does not have subject matter jurisdiction over an FTCA claim unless the plaintiff first presented the underlying tort claim to the agency and it was "finally denied" by the agency. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 111–13 (1993) (strictly construing administrative exhaustion requirement in 28 U.S.C. § 2675(a) and holding that FTCA action filed before exhaustion completed could not proceed in district court); *Brady v. United States*, 211 F.3d 499, 502–03 (9th Cir. 2000) (administrative exhaustion requirement in 28 U.S.C. § 2675(a) is jurisdictional); *see also Kimber v. Del Toro*, No. 3:21cv1487-BTM-BLM, 2024 WL 171386, at *5 (S.D. Cal. Jan. 16, 2024) ("A plaintiff seeking to bring suit under the FTCA must affirmatively allege that they filed a claim with the appropriate federal agency and that the agency denied that claim."). Therefore, as currently pleaded, the Court lacks jurisdiction over Plaintiff's FTCA claims. *See* 28 U.S.C. § 2675(a).

Furthermore, even if Plaintiff had properly exhausted his administrative remedies, the FTCA claims as alleged in the Complaint would still be subject to dismissal. As noted above, to state an FTCA claim, plaintiffs must show that the conduct of the government violates some law of the state where the act or omission occurred. *See FDIC v. Meyer*, 510 U.S. 471, 477–78. Thus, in this case, any duty that the United States owed Plaintiff must be found in California state tort law. *See Lutz v. United States*, 685 F.2d 1178, 1184

(9th Cir. 1982). But Anaya fails to clearly identify what specific California tort(s) provide the basis for his claim. Instead, he makes vague references to "intentional tortious physical pain, [e]motional distress, humiliation, degradation, anguish, embarrassment, intimidation f[r]ustration, suffering and ongoing medical condition of anxiety," all of which are insufficient to state a plausible tort claim. ECF No. 1 at 11. *See Iqbal*, 556 U.S. at 678 (stating "mere conclusory statements" are insufficient to state a claim); *see also Gelazela v. United States*, No. 122cv01539ADAEPGPC, 2023 WL 5956843, at *1 (E.D. Cal. Sept. 13, 2023) (finding "bare invocations of 'personal injury,' 'intentional infliction of emotional distress,' 'strict liability tort,' 'Prima Facie tort,' and 'negligence' are patently insufficient" to support an FTCA claim); *Karkour v. United States*, No. CV1000831MMMRCX, 2010 WL 11595795, at *4 (C.D. Cal. Mar. 10, 2010) (dismissing FTCA claim when complaint failed to identify any particular tort upon which the plaintiff's claims were based); *Reed v. Milusnic*, No. 2:22cv03973-JLS-JC, 2024 WL 1698107, at *7 (C.D. Cal. Mar. 1, 2024) (explaining that to state an FTCA claim, a plaintiff must "state the tort(s) he is claiming against the United States and provide the specific factual allegations supporting his FTCA claim").

And finally, to the extent Plaintiff raises an FTCA claim based on an alleged violation of the Fourth Amendment [*see* ECF No. 1 at 8], he also fails to state a claim because the United States is not liable under the FTCA for constitutional tort claims. *See Meyer*, 510 U.S. at 478; *Cato v. United States*, 70 F.3d 1103, 1111 (9th Cir. 1995).

Accordingly, Plaintiff's FTCA claims are dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Iqbal*, 556 U.S. at 678.

### 2. Alien Tort Statute

Anaya also fails to state a claim under the Alien Tort Statute. The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Not all violations of international law are actionable under the ATS; in order to state an ATS claim, a party must allege a violation of a definite and accepted norm

of international law. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1089 (N.D. Cal. 2008).

Moreover, federal courts have held that the ATS does not imply any waiver of sovereign immunity. *See Quintero Perez v. United States,* 8 F.4th 1095, 1100–01 (9th Cir. 2021) ("[T]he ATS 'does not waive sovereign immunity.'"); *see also Tobar v. United States*, 639 F.3d 1191, 1196 (9th Cir. 2011) ("[T]he Alien Tort Statute has been interpreted as a jurisdiction statute only—it has not been held to imply any waiver of sovereign immunity."); *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207 (D.C. Cir. 1985) ("The Alien Tort Statute itself is not a waiver of sovereign immunity."); *Goldstar (Pan.) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992) (same). Thus, a party asserting jurisdiction under the ATS must establish, independent of that statute, that the United States has consented to suit.

Anaya has failed to state an ATS claim against the United States because he has not shown that the United States has waived sovereign immunity for such a claim. Anaya points to both the Universal Declaration of Human Rights and the Vienna Convention for Consular Relations as bases for his ATS claim. *See* ECF No. 1 at 7, 9–10. But the Supreme Court has held that "the [Universal] Declaration [of Human Rights] does not of its own force impose obligations as a matter of international law." *Sosa*, 542 U.S. at 734; *see also Diaz v. Grupo Mexico, Inc*., No. CV-10-00355-PHX-ROS, 2011 WL 13183233, at *2 (D. Ariz. Mar. 29, 2011), *aff'd*, 487 F. App'x 366 (9th Cir. 2012) ("The Universal Declaration of Human Rights . . . cannot establish customary international law on its own because it is merely aspirational."). Likewise, Article 36 of the Vienna Convention does not create a private cause of action under the ATS. *Karboau v. City of Portland*, 498 Fed. App'x 747 (9th Cir. 2012) (finding private rights under Article 36 are not enforceable under the Alien Tort Statute); *cf. Cornejo v. County of San Diego*, 504 F.3d 853, 855 (9th Cir. 2007) (concluding "Article 36 does not create judicially enforceable rights. . ..");  *see also Mora v. New York*, 524 F.3d 183, 209 (2d Cir. 2008) (declining to recognize an ATS cause of action for the alleged violation of Article 36 of

the Vienna Convention); *Gandara v. Bennett*, 528 F.3d 823, 830 n.1 (11th Cir. 2008) (Rodgers, J., concurring) ("Accordingly, as the majority recognizes, the law of this circuit is that the Convention does not confer individual rights that may be enforced through § 1983 or § 1350).

For the foregoing reasons, Plaintiff has failed to state a claim under the Alien Tort Statute. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Iqbal*, 556 U.S. at 678.

### D.   Leave to Amend

Given Plaintiff's pro se statue, the Court **GRANTS** him leave to amend his Complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### IV.   CONCLUSION AND ORDER

Accordingly, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed *In Forma Pauperis* [ECF No. 2];

2. **ORDERS** the Warden of Otay Mesa Detention Center, or their designee, to collect from Plaintiff's trust account the $1.80 initial filing fee assessed, if those funds are available at the time this Order is executed, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Warden, Otay Mesa Detention Center, 7488 Calzada De La Fuente, San Diego, CA 92231.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) without prejudice.

/ / /

5. On or before **September 26, 2025**, Plaintiff may file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: July 28, 2025

_____
Honorable Linda Lopez
United States District Judge