UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL RIVERA ANAYA,<br><br>  Plaintiff,<br><br>vs.<br><br>C. RIVERO, A. GARCIA, P. GAFF, B. HOLERUD,<br><br>  Defendants. | Case No.: 25cv0959-LL-KSC<br><br>**ORDER: (1) DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) and**<br><br>**(2) DENYING MOTION FOR APPOINTMENT OF COUNSEL AND REQUESTS FOR SERVICE AND JURY TRIAL (ECF Nos. 6, 7, 8)** |

**I.  INTRODUCTION**

Plaintiff Daniel Rivera Anaya ("Plaintiff" or "Anaya") is in federal custody[1] and proceeding pro se with a civil action. The Court previously granted Plaintiff's motion to

---

[1] The Court takes judicial notice of Plaintiff's criminal case in *United States v. Anaya Rivera*, No. 25-cr-0074-TWR (S.D. Cal.). *See Bias v. Moynihan,* 508 F.3d 1212, 1225 (9th Cir. 2007) (stating a court "'may take notice of proceedings in other courts, both within and without the federal judicial system'"). In that case, Plaintiff pleaded guilty to one count of misdemeanor assault on a federal officer (18 U.S.C. § 111(a)(1)) and was sentenced to one year in custody. *See United States v. Anaya Rivera*, No. 25-cr-0074-TWR (S.D. Cal.) (ECF No. 55).

proceed in forma pauperis but dismissed his original complaint for failure to state a claim. ECF No. 4. The Court granted Anaya leave to amend and his First Amended Complaint ("FAC") is currently before the Court. ECF No. 5. Anaya has also filed a motion for appointment of counsel, a "request for service," and a "request for jury trial." ECF Nos. 6, 7, 8.

In his FAC, Plaintiff alleges Defendants, all federal officers, violated his rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), by using excessive force against him and failing to provide him with adequate medical care. ECF No. 5 at 9–12. He also alleges his due process right were violated when Defendants failed to follow policy that "mandates that [asylum] applicants for admission be properly inspected." *Id.* at 8. For the reasons discussed below, the court dismisses the FAC for failure to state a claim; and denies the motion for appointment of counsel, the request for service, and the request for jury trial, as moot.

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A. Legal Standards

As with his original complaint, the Court must screen Plaintiff's FAC pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and sua sponte dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.*

B. **Plaintiff's Allegations**

Anaya alleges that on December 11, 2024, he went to the San Ysidro pedestrian port of entry to seek entry to the United States as a refugee. ECF No. 5 at 4. After "crossing the painted line designating the United States and Mexico international border," Anaya approached the "entry threshold turnstile." *Id.* United States Customs Border and Protection ("CPB") Officer Rivero stopped Anaya while he was "inside the turnstile" and instructed Anaya to show his passport. *Id.* Instead of doing so, Anaya "pushed forward" through the turnstile. Rivero "took offense" that Anaya had exited the turnstile and shoved Anaya in the chest "with the intention to immediately return [Anaya] back into Mexico." *Id.*

Anaya tried to prevent Rivero from pushing him further. When Rivero was unable to push Anaya back into Mexico, he radioed for assistance. *Id.* Other CPB officers arrived and "joined Rivero's efforts to forcibly push [Anaya] across the gate door back into Mexico." *Id.* at 5. In the process, Rivero ripped three buttons from Anaya's shirt. *Id.*

Anaya "stood his ground" at the "door on Mexico's side of the gate" and the officers began closing the gate. CPB Officer Gaff kicked Anaya and another officer slammed the gate door against him. *Id.* Rivero also threated to tase Anaya. *Id.* Plaintiff reacted by throwing his papers in Rivero's directions. *Id.* Anaya was then pulled back into the U.S. side of the border and away from public view where he was "brutally dropped to the ground." *Id.* While Anaya was face down on the ground, Officer Garcia "slammed" him into the concrete, knocking Anaya's glasses off and leaving swelling to his left cheek bone. *Id.* at 5–6. Officer Gaff then placed his knees on Anaya's back. Anaya was then "roughly picked up" and handcuffed by Rivero. *Id.* at 6.

Anaya was then escorted to "secondary." *Id.* He was in pain but offered no medical attention. *Id.* Shortly thereafter, Plaintiff was taken to another security building where he was fingerprinted by Officer Holerud. *Id.* Anaya asked to speak to someone from the Mexican Consulate, but his request was ignored. Anaya was ultimately charged with assault on a federal officer. *Id.*

## C. Discussion

Anaya raises three claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). He alleges Defendants Rivero, Garcia, Gaff and Holerud violated his constitutional right (1) to be free from excessive force (2) to adequate medical care and (2) to due process as an asylum seeker. ECF No. 5 at 9–13. Anaya seeks money damages. *Id.* at 14.

### 1. Bivens

In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Iqbal*, 556 U.S. at 675 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). *Bivens*, however, provides a judicially recognized remedy for constitutional violations committed by federal actors only in limited circumstances.

Since *Bivens* was decided, the Supreme Court has expressly recognized an implied cause of action in only three types of cases: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment. Apart from these cases, the Court has "consistently refused to extend *Bivens* liability" to other contexts. *Malesko*, 534 U.S. at 68.

Any extension of *Bivens* requires a two-step analysis. First, a court must ask whether the request involves a claim that arises in a "new context" or involves a "new category of defendants." *Id*. Second, if the claim arises in a new context, the Court must next ask whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert v. Boule*, 596 U.S 482, 492 (2022) (quoting *Ziglar v. Abassi*, 582 U.S. 120, 131 (2017)). If "there is any reason to think that Congress might be better equipped

to create a damages remedy," the claim cannot proceed. *Marquez v. Rodriguez*, 81 F.4th 1027, 1030 (9th Cir. 2023) (stating the *Bivens* test "will foreclose relief in all but the most extraordinary cases"); *Egbert*, 596 U.S. at 502 ("[W]e have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution.").

### 2. Excessive Force

First, Plaintiff has failed to state a Fourth Amendment excessive force claim under *Bivens*. As noted above, the Supreme Court has cautioned against expanding *Bivens*' implied right of action into new contexts beyond those already recognized. *Abbasi*, 582 U.S at 134. Most recently, the Supreme Court refused to extend *Bivens* to a Fourth Amendment excessive force claim against a U.S. Customs Border and Protection agent who got into an altercation with the plaintiff "while carrying out Border Patrol's mandate to 'interdic[t] persons attempting to illegally enter or exit the United States.'" *Egbert*, 596 U.S at 494 (quoting 6 U.S.C. § 211(e)(3)(A)). Thus, a Fourth Amendment excessive force claim such as Anaya's, brought under *Bivens* based on the conduct of CPB agents at the border is foreclosed by the holding in *Egbert*. *See id*. at 486 (stating "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts"); *see also Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 928 n.9 (9th Cir. 2024) (noting the Court in *Egbert* cited 8 CFR § 287.10 as an alternative available remedy foreclosing an extension of *Bivens*). Therefore, Plaintiff's excessive force claim must be dismissed. *See* 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).

### 3. Medical Care

Anaya has also failed to state a *Bivens* claim based on the failure to provide him with medical treatment, which he alleges was in violation of his Fifth Amendment due process rights. ECF No. 5 at 12. Anaya argues that his due process claim is "not different in a meaningful way" from the Eighth Amendment claim at issue in *Carlson*. ECF No. 5 at 13. While Plaintiff is correct that both he and the plaintiff in *Carlson* sought redress against federal officials for inadequate medical care, Anaya's claim arises under the Fifth

Amendment while Carlson's arose under the Eighth Amendment. *See Carlson*, 446 U.S. at 19–20. The implication of a different constitutional right alone renders Plaintiff's claim meaningfully different from the one in *Carlson*. *See Egbert*, 596 U.S. at 498 ("[A] new context arises when there is a new 'constitutional right at issue[.]'"); *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (finding the language of the Due Process Clause protecting detainees and the Cruel and Unusual Punishment Clause protecting prisoners "differs, and the nature of the claims often differs."). In addition, the plaintiff in *Carlson* was a convicted prisoner, while Anaya an arrestee/detainee. Thus, Plaintiff's claim involves both a different constitutional right—the Fifth Amendment, not the Eighth Amendment—and different type of plaintiff, than the claim in *Carlson*. Accordingly, the Court concludes Plaintiff's claim arises in a "new context." *See Ziglar*, 582 U.S. at 147 ("[E]ven a modest extension is still an extension.").

The next question is whether "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)). The Supreme Court has made clear that "regulating the conduct of [federal] agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field." *Hernandez*, 589 U.S. at 108–09. The Court has also found "the Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate." *Egbert*, 596 U.S. at 495. Thus, special factors weigh against extending *Bivens* to Anaya's claim for damages against Defendants, all CPB officers.

In sum, the Court finds Plaintiff's claim arises in a "new context" and the "unforgiving" special factors inquiry counsels against extending *Bivens* relief in this case. *See id.* at 492. Therefore, he has failed to state a claim.

/ / /

### 4. Asylee Admission Process

Finally, Anaya claims Defendants failed to follow policy that "mandates that [asylum] applicants for admission be properly inspected." ECF No. 5 at 8. Plaintiff couches it as a "discrimination" claim but also references "due process." *Id.* The only Fifth Amendment-based *Bivens* claim the Supreme Court has recognized was the one in *Davis*, which concerned alleged sex discrimination in the workplace. *Davis*, 442 U.S. at 230. Although Anaya vaguely characterizes his claim as one of "discrimination," it is meaningfully different from the issue in *Davis* and as such, the Court finds it constitutes a "new context." *See Ziglar*, 582 U.S. at 147.

In addition, the Court finds "special factors" counsel against extending *Bivens* further to avoid "interfering with the authority of the other branches [of government.]" *Hernandez*, 589 U.S. at 102. "[I]mmigration enforcement is 'a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere.'" *Tun-Cos v. Perrotte*, 922 F.3d 514, 526 (4th Cir. 2019) (quoting *Abassi*, 582 U.S. at 137). As such, the Court finds "Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed'" on such a claim. *See Egbert*, 596 U.S. at 492; *see also, e.g., Elgamal v. Bernacke,* 2016 WL 3753524, at *6 (D. Ariz. 2016) ("'[I]mmigration policy and enforcement implicate serious separation of powers concerns,' heightening the risk that 'a judicially created *Bivens* remedy' will intrude upon the constitutional authority of Congress and the Executive Branch."). Therefore, to the extent Anaya seeks to raise such a due process claim based on Defendants' alleged failure to admit him to the United States as an asylee, the Court finds *Bivens* does not provide a remedy.

### D. Conclusion

For the above reasons, the Court finds Plaintiff has failed to state a claim under *Bivens* for excessive force, failure to provide medical care after his arrest at the border, and failure to follow immigration policy. The FAC is therefore **DISMISSED** without further leave to amend. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *see also e.g., Chambers v.*

*Herrera*, 78 F.4th 1100, 1107 (9th Cir. 2023) (concluding that even plausible allegations could not constitute a *Bivens* claim for excessive force under *Egbert* and finding it "absolutely clear" that "amendment would be futile"); *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (stating dismissal without leave to amend is proper if it is "clear it cannot be cured by amendment.").

## III.  MISCELLANEOUS MOTIONS

Because the FAC is dismissed without leave to amend, Plaintiff's motion for appointment of counsel, request for service, and request for a jury trial (ECF Nos. 6–8) are **DENIED** as moot.

## IV.  CONCLUSION AND ORDER

Accordingly, the Court:

1. **DENIES** Plaintiff's Motion for Appointment of Counsel [ECF No. 7] as moot.

2. **DENIES** Plaintiff's Request for Service [ECF No. 6] as moot.

3. **DENIES** Plaintiff's Request for Jury Trial [ECF No. 8] as moot.

4. **DISMISSES** Plaintiff's FAC sua sponte and in its entirety without leave to amend based on a failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1); and **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and close the file.

**IT IS SO ORDERED.**

Dated:  December 23, 2025

Honorable Linda Lopez
United States District Judge